# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

***Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948**

---

| | |
|---|---|
| Caption in Supreme Court: | DOMINIC CHOATE, Appellee, v. INDIANA HARBOR BELT RAILROAD COMPANY *et al.*, Appellants. |
| Docket No. | 112948 |
| Filed | September 20, 2012 |
| Rehearing denied | November 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant railroads had no legal duty to a 12-year-old trespasser who was injured when he attempted to jump on a moving train, and the issue of duty should not have been sent to the jury—plaintiff's verdict reversed. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. William J. Haddad, Judge, presiding. |
| Judgment | Judgments reversed. |

Counsel on
Appeal

Michele L. Odorizzi, of Chicago, and Evan M. Tager and Brian J. Wong, of Washington, D.C., all of Mayer Brown, LLP, and David R. Schmidt and George H. Brant, of Fedota Childers, P.C., of Chicago, for appellants.

Milo W. Lundblad and Marvin Brustin, of Brustin & Lundblad, Ltd., of Chicago (Leslie J. Rosen, of counsel), for appellee.

Hugh C. Griffin, of Hall, Prangle & Schoonveld, LLC, of Chicago (Louis P. Warchot and Daniel Saphire, of Washington, D.C., of counsel), for *amici curiae* Association of American Railroads *et al*.

Rachel Kaplan and Stephen Wood, of Chicago, for *amicus curiae* Chicago Transit Authority.

Richard J. Rosenblum, of Rubin, Machado & Rosenblum, Ltd., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Justices

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Justices Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

Chief Justice Kilbride dissented upon denial of rehearing, with opinion.


**OPINION**

¶ 1    Plaintiff, Dominic Choate, brought a personal injury action in the circuit court of Cook County against defendants, Indiana Harbor Belt Railroad Company (IHB), the Baltimore and Ohio Chicago Terminal Railroad Company (B&OCT), and CSX Transportation, Inc. (CSX). A jury returned a verdict in favor of plaintiff. The appellate court affirmed. 2011 IL App (1st) 100209. We allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). We now reverse the judgments of the appellate and circuit courts.

¶ 2                              I. BACKGROUND
¶ 3                              A. Underlying Facts
¶ 4    In July 2003, plaintiff was 12 years and 9 months old, and had finished the sixth grade. Plaintiff lived in Chicago Ridge. CSX, which wholly owns B&OCT, owns three railroad tracks that run northwest to southeast through Chicago Ridge. IHB manages the tracks and patrols the railroad right-of-way.

¶ 5    Plaintiff testified that on July 30, 2003, he and two friends, Steven Weyer and Charles Spindler, met up with three girls, Alisa Van Witzenburg, Brittany Edgar, and Jessica Gunderson in the parking lot of an apartment building in Chicago Ridge. These children were all between 12 and 13 years old.

¶ 6    Defendants' railroad tracks lie adjacent to the north side of the parking lot. There was no railroad crossing at that location. The nearest crossings were at Ridgeland Avenue, approximately three-quarters of a mile northwest, and Central Avenue, approximately one-quarter of a mile southeast. Only segments of this mile-long corridor were fenced. On the north side of the tracks at the parking lot, a chain link fence was torn open and rolled back to enable people to walk through it to cross the tracks. On the south side of the tracks, a chain link fence ended east of the parking lot. A sign posted on the west end of this fence read as follows:

"<u>DANGER</u>

NO

TRESPASSING

NO

DUMPING"

According to his testimony, plaintiff did not see this sign on July 30, 2009.

¶ 7    Plaintiff further testified that while the group was gathered in the parking lot, a freight train approached on the middle track. The train was moving eastbound, from their left to their right, steadily at approximately 10 miles per hour and never stopped. According to plaintiff, the group originally intended to wait for the train to pass, and cross the tracks to reach Weyer's house. However, after a few minutes, plaintiff, Spindler, and Weyer began walking toward the tracks. They stepped onto the railroad right-of-way. Plaintiff and Spindler decided on the spur-of-the-moment to jump onto the train. Plaintiff had never before attempted to jump aboard a moving train, and he had never seen anyone successfully do so. At that point, plaintiff's motive for jumping on the train was not to cross the tracks to go anywhere else. Rather, plaintiff was focused solely on trying to impress his friends, especially Van Witzenburg, his girlfriend at that time.

¶ 8    Plaintiff testified that Spindler attempted to jump onto the train first. Spindler tried to grab a ladder on the side of a moving boxcar, but he was unsuccessful and stepped away from the train. Plaintiff then attempted to jump onto the train three times. On his first attempt, plaintiff stood flat-footed on the ground and grabbed a ladder. At the time, he was only approximately 4 feet 10 inches tall. He was able to grab the bottom rung of the ladder with his right hand. However, the ladder bent his fingers backwards and he pulled his hand back. On his second attempt, plaintiff ran alongside the train and grabbed a ladder. However, his shoes began to slip on the rocky roadbed, forcing him to let go. On his third attempt, plaintiff grabbed hold of a ladder with both hands and pulled his body up toward the train. He managed to put his right foot on the ladder. Plaintiff testified that he does not recall what happened next while he was on the train.

¶ 9    Edgar and Gunderson each testified that the girls were screaming at plaintiff to stop what

he was doing and get away from the train. Gunderson and Van Witzenburg each testified that plaintiff slipped from the ladder and fell down. Van Witzenburg further saw his left foot fall under a train wheel.

¶ 10    Plaintiff remembered waking up on the ground and trying unsuccessfully to stand. Plaintiff's left foot had been severed above the toes.

¶ 11    Austin Patton testified that he saw the children in the parking lot, shortly before the accident. Patton testified that he watched as the boys approached the moving train. One of the boys tried to grab a ladder on the side of a boxcar, but he was knocked down and made no further attempt to jump on the train. The other boy, whom Patton identified as plaintiff, continued trying to jump on the train. Patton saw plaintiff's one hand lose its grip on the ladder, such that the moving train "swung him [plaintiff] around so his back was to the train. He went down and his—his foot went up over that rail."

¶ 12    Patton was approximately 50 feet from plaintiff and Spindler when they began their attempts to jump on the train. Patton yelled at the boys to stay away from the tracks, but the train was so loud they could not hear him.[1] Patton testified: "So as I'm making my way towards him is when—is when I saw what happened." Patton ran over and pulled plaintiff away from the moving train. Patton saw that plaintiff "lost the tip of his foot at an angle." He instructed a friend who was with him to run back to his apartment, telephone 911, and bring back towels. Patton elevated plaintiff's leg, covered it with the towels, and flagged down a nearby ambulance.

¶ 13    Dr. Andrea Kramer, plaintiff's orthopedic surgeon, testified that plaintiff's injury necessitated an amputation below the knee, rather than closer to the ankle, because "there was no skin left on his heel or his foot, so it was the best option."


¶ 14                          B. Procedural Background

¶ 15    On March 16, 2005, plaintiff filed the instant second amended complaint. Plaintiff alleged, *inter alia*, that defendants failed to: adequately fence the area; prevent minor children from accessing trains or the railroad tracks; post warning signs, or otherwise warn of the danger of trains; and monitor the area in the vicinity of the train and railroad tracks to prevent children from gaining access thereto.

---

[1]Spindler, Van Witzenburg, Edgar and Gunderson each testified that the train was stationary when they gathered in the parking lot. Spindler testified that plaintiff had climbed onto the stationary train, but the train jolted forward, which threw plaintiff off and caused his injury. However, Van Witzenburg, Edgar, and Gunderson each testified that the train had begun to move before plaintiff attempted to grab a boxcar ladder. Plaintiff himself testified that he and his friends saw the train approach and steadily move past them, never stopping. Also, plaintiff's own expert, Dr. William Berg, testified: "Someone mentioned at some point, one of the youngsters, that they recall the train at some point being stopped. But I think there's no question it was moving." Further, Carl Bradley, a railroad accident consultant, testified regarding the train's event recorder, which is similar to a "black box" on an airplane. According to Bradley's testimony, the event recorder indicated that the train was moving at the time of the accident.

¶ 16    Defendants moved for summary judgment, contending they did not owe plaintiff a legal duty because: (1) jumping onto a moving freight train is an obvious danger to children of plaintiff's age; and (2) based on his discovery deposition, plaintiff subjectively appreciated the danger. The circuit court initially granted defendants' motion, but on reconsideration, vacated the summary judgment. The court found that whether the danger of jumping onto a moving freight train is so obvious as to preclude any duty owed by defendants to plaintiff is a question of fact for the jury.

¶ 17    The trial adduced the above-recited evidence. The jury returned a verdict in favor of plaintiff. The jury assessed plaintiff's damages in the amount of $6.5 million, but reduced that amount to $3.9 million after finding that plaintiff was 40% comparatively negligent. The circuit court subsequently entered judgment on the verdict in the amount of $3,875,000.[2]

¶ 18    Defendants timely filed a posttrial motion pursuant to section 2-1202(b) of the Code of Civil Procedure (735 ILCS 5/2-1202(b) (West 2002)). Defendants requested a judgment *non obstante veredicto (n.o.v.)*, asserting that: (1) they did not owe plaintiff a duty to protect against the possibility that he might injure himself by confronting an obvious danger, and (2) plaintiff's alleged remedy for eliminating the dangerous condition was not reasonable. Alternatively, defendants requested a new trial. The circuit court denied defendants' posttrial motion. The appellate court affirmed the judgment of the circuit court. 2011 IL App (1st) 100209.

¶ 19    Defendants appeal to this court. We granted the Illinois Trial Lawyers Association leave to submit an *amicus curiae* brief in support of plaintiff. We also granted the Association of American Railroads, the Chicago Transit Authority, and the Northeast Illinois Regional Commuter Railroad Corporation (Metra) leave to submit an *amici curiae* brief in support of defendants. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 20                                          II. ANALYSIS

¶ 21    Defendants contend that they are entitled to a judgment *n.o.v.*, which is properly granted only where all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). An adverse ruling on a motion for a judgment *n.o.v.* is reviewed *de novo*. *Evans v. Shannon*, 201 Ill. 2d 424, 427 (2002). In other words, the reviewing court applies the same *Pedrick* standard as did the circuit court. *Harris v. Thompson*, 2012 IL 112525, ¶ 15.

¶ 22    Defendants contend that they are entitled to a judgment *n.o.v.* because they had no duty to protect against the possibility that plaintiff might injure himself confronting an obvious danger. To succeed in an action for negligence, the plaintiff must establish that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach proximately caused injury to the plaintiff. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d

[2]The court set off against the jury's award a $25,000 settlement plaintiff received from another named defendant, the Burlington Northern and Santa Fe Railway Company, which operated the train.

213, 227 (1996). A legal duty refers to a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Iseberg v. Gross*, 227 Ill. 2d 78, 87 (2007); *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525 (1987). Absent a duty, "no recovery by the plaintiff is possible as a matter of law." *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991); accord *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 116 (1995) (same). The existence of a duty under a particular set of circumstances is a question of law for the court to decide. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 445 (1996); *Vesey*, 145 Ill. 2d at 411. Where a plaintiff has obtained recovery against a defendant based on negligence, and if the defendant did not owe the plaintiff a duty, then a judgment *n.o.v.* in favor of the defendant is required. *Washington v. City of Chicago*, 188 Ill. 2d 235, 238-39 (1999); see *Fris v. Personal Products Co.*, 255 Ill. App. 3d 916, 923 (1994).

¶ 23                       A. Premises Liability: No Duty to Trespassers

¶ 24        Pursuant to the theory of premises liability, an owner or occupier of land (hereafter landowner) owes a duty of reasonable care under the circumstances to all entrants upon the premises except to trespassers. *Rhodes*, 172 Ill. 2d at 227-28. In the case at bar, the parties agree that plaintiff, Spindler, and Weyer became trespassers when they stepped onto the railroad right-of-way. See 625 ILCS 5/18c-7503(1)(a)(i) (West 2002) (Illinois Vehicle Code providing that no unauthorized person is permitted to "walk, ride, drive or be upon or along the right of way or rail yard of a rail carrier within the State, at a place other than a public crossing").

¶ 25        At common law, the general rule is that a landowner is under no duty to maintain the premises for the safety of trespassers, whether they are adults or children. *Kahn v. James Burton Co.*, 5 Ill. 2d 614, 625 (1955); *Darsch v. Brown*, 332 Ill. 592, 595-96 (1928). Indeed, a landowner owes no duty of reasonable care to adult or child trespassers, except to refrain from willfully and wantonly injuring them. *Mt. Zion State Bank*, 169 Ill. 2d at 116; see *Marcovitz v. Hergenrether*, 302 Ill. 162, 167 (1922).[3] This general rule applies when the premises is a railroad right-of-way. See *Illinois Central R.R. Co. v. Eicher*, 202 Ill. 556, 560 (1903); *Benamon v. Soo Line R.R. Co.*, 294 Ill. App. 3d 85, 89 (1997); *Hocking v. Duluth, Missabe & Iron Range Ry. Co.*, 117 N.W.2d 304, 309-10 (Minn. 1962) ("It has never been the rule that a railway company is required to make its land, rights-of-way, tracks, and trestles a safe playground for children. *** The railway company is not an insurer of the lives or limbs of children who may stray or play upon its premises.").

¶ 26                              1. Child Trespasser Exception

¶ 27        Courts have recognized a number of exceptions to the rule of no duty of reasonable care

---

[3]In the case at bar, plaintiff did not allege any willful and wanton misconduct on the part of defendants.

to trespassers. *Rhodes*, 172 Ill. 2d at 229. One such exception pertains to children. Pursuant to *Kahn* and its progeny, the law imposes a duty upon a landowner to exercise reasonable care to remedy a dangerous condition on the premises, or to otherwise protect children from injury resulting from the dangerous condition, where: (1) the landowner knew or should have known that children habitually frequent the property; (2) a defective structure or dangerous condition was present on the property; (3) the defective structure or dangerous condition was likely to injure children because they are incapable, based on age and maturity, of appreciating the risk involved; and (4) the expense and inconvenience of remedying the defective structure or dangerous condition was slight when compared to the risk to children. *Mt. Zion State Bank*, 169 Ill. 2d at 116-17; *Kahn*, 5 Ill. 2d at 625.

¶ 28    *Kahn* established the foreseeability of harm to children as the cornerstone of liability. *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 325-26 (1978); *Kahn*, 5 Ill. 2d at 625. Where the above elements are satisfied, harm to children is deemed sufficiently foreseeable for the law to impose a duty of reasonable care upon the landowner. *Corcoran*, 73 Ill. 2d at 326. Also, *Kahn* "brought Illinois law into harmony with section 339 of the Restatement (Second) of Torts." *Id*. (citing Restatement (Second) of Torts § 339 (1965)). In the case at bar, defendants contend that the third and fourth elements have not been satisfied as a matter of law, thereby precluding imposition of a duty of reasonable care owed to plaintiff.

¶ 29                                  *Obviousness of Danger*

¶ 30    At several junctures in the case at bar, including defendants' posttrial motion, defendants contended that whether the danger of the moving train was obvious to plaintiff was a matter of law for the circuit court to decide. However, the court rejected this contention whenever it was raised. For example, rejecting defendants' motion for a directed verdict at the close of plaintiff's case in chief, the court stated: "The jury is going to make that determination." In affirming the judgment of the circuit court, the appellate court held that plaintiff's act of jumping aboard a slow-moving freight train was *not* an obvious danger that children of plaintiff's general age and experience can be expected to appreciate as a matter of law. Rather, the court held that the issue was one of fact for the jury to determine. 2011 IL App (1st) 100209, ¶ 59.

¶ 31    We disagree. This court has repeatedly explained that a landowner has a duty to remedy a dangerous condition on the premises where the condition is likely to cause injury to the general class of children who, by reason of their age and immaturity, would not be expected to comprehend and avoid the attendant risks. *Cope v. Doe*, 102 Ill. 2d 278, 286 (1984); *Corcoran*, 73 Ill. 2d at 326. However, it is equally settled that a landowner has no duty to remedy a dangerous condition if it presents *obvious* risks that children generally of the plaintiff's age would be expected to appreciate and avoid. This court has reasoned: "since children are expected to avoid dangers which are obvious, there is no reasonably foreseeable risk of harm. The law then is that foreseeability of harm to the child is the test for assessing liability; but there can be no recovery for injuries caused by a danger found to be obvious." *Cope*, 102 Ill. 2d at 286; accord *Logan v. Old Enterprise Farms, Ltd.*, 139 Ill. 2d 229, 236-37 (1990); *Corcoran*, 73 Ill. 2d at 326. While certainly there are latent dangers that children

would not appreciate due to their minority, a landowner "is free to rely upon the assumption that any child old enough to be allowed at large by his parents will appreciate certain obvious dangers or at least make his own intelligent and responsible choice concerning them." *Mt. Zion State Bank*, 169 Ill. 2d at 117.

¶ 32 "In Illinois, obvious dangers *include* fire, drowning in water, or falling from a height." (Emphasis added.) *Mt. Zion State Bank*, 169 Ill. 2d at 118 (collecting authorities). We observe that this is not an exclusive list. Rather, there are "*many dangers *** which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large.*" (Emphasis added.) Restatement (Second) of Torts § 339 cmt. j (1965). Our appellate court long ago held that it was not the duty of a railroad to keep watch and warn boys not to jump onto its cars because jumping from the ground upon a moving freight train is dangerous, and all men and all ordinarily intelligent boys know it to be so. *Fitzgerald v. Chicago, Burlington & Quincy R.R. Co.*, 114 Ill. App. 118 (1904) (12-year-old plaintiff); *LeBeau v. Pittsburgh, C., C. & St. L. Ry. Co.*, 69 Ill. App. 557 (1897) (10-year-old plaintiff).[4] Further, the weight of authority from jurisdictions across the country recognizes that a moving train presents a danger that is so obvious that any child allowed at large can reasonably be expected to appreciate the risk involved in coming within the area made dangerous by it. See *Holland v. Baltimore & Ohio R.R. Co.*, 431 A.2d 597, 602-03 (D.C. 1981) (collecting cases); *McKinney v. Hartz & Restle Realtors, Inc.*, 510 N.E.2d 386, 389-90 (Ohio 1987) (collecting cases); Restatement (Second) of Torts § 339, Appendix, Reporter's Notes, at 133-34 (1966) (collecting cases); Wade R. Habeeb, Annotation, *Railroad's Liability for Injury to or Death of Child on Moving Train Other Than As Paying or Proper Passenger*, 35 A.L.R.3d 9 (1971).

¶ 33 In the case at bar, the appellate court acknowledged the above-cited persuasive authority, but was not guided by it because the court considered *La Salle National Bank v. City of Chicago*, 132 Ill. App. 3d 607 (1985), and *Engel v. Chicago & North Western Transportation Co.*, 186 Ill. App. 3d 522 (1989), to be dispositive. 2011 IL App (1st) 100209, ¶¶ 51, 60. In each case, the appellate court affirmed a jury verdict in favor of a minor plaintiff despite the defendant's contention that hopping a moving train was dangerous as a matter of law. In *Engel*, the court reasoned: "The policy determination that most children are presumed to know the risks of injury inherent in certain types of activities, such as playing with fire or playing in bodies of water, does not *per se* extend to the train-flipping cases." *Engel*, 186 Ill. App. 3d at 531. In *La Salle*, the court simply reasoned that "the jury made no specific finding that plaintiff 'appreciated the risk' in jumping on a moving freight train." *La Salle*, 132 Ill. App. 3d at 615.

¶ 34 We note that the reasoning expressed in *La Salle* and *Engel* is inconsistent with the principles enunciated by this court in both *Cope* and *Corcoran*. In any negligence action, the court must first determine as a matter of law whether the defendant owed a duty to the plaintiff. See *Iseberg*, 227 Ill. 2d at 87; *Anderson v. Woodlawn Shell, Inc.*, 132 Ill. App. 3d

---

[4]Appellate court decisions filed prior to 1935 have no binding authority, and can only be considered persuasive. *Reichert v. Court of Claims*, 203 Ill. 2d 257, 262 n.1 (2003).

580, 582 (1985). Further, the requirement of an open and obvious danger is not merely a matter of the plaintiff's contributory negligence, or the parties' comparative fault, but rather a lack of the defendant's duty owed to the child. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 447 (1996); *Mt. Zion State Bank*, 169 Ill. 2d at 117-18. The existence of a duty necessarily subsumes the question of whether the danger of a particular condition should be obvious to children of the plaintiff's age. Where there is no dispute about the physical nature of the condition, whether a danger is open and obvious is a question of law. See *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1052-53 (2010); *Belluomini v. Stratford Green Condominium Ass'n*, 346 Ill. App. 3d 687, 691-93 (2004). In *Mt. Zion State Bank*, which involved the subsumed issue of obviousness, this court made it clear that the existence of a duty is a question of law, which *must* be resolved by the court. *Mt. Zion State Bank*, 169 Ill. 2d at 116. In the case at bar, the circuit court should have considered in the first instance the obviousness of the danger of moving trains as it relates to the foreseeable risk of harm to plaintiff.

¶ 35    *Corcoran* and *Cope* were controlling authority when the appellate court decided *La Salle* and *Engel*. If a ditch, as in *Corcoran*, 73 Ill. 2d at 328, and a partially frozen retention pond, as in *Cope*, 102 Ill. 2d at 289, presented obvious dangers that children generally would be expected to recognize, then surely " 'the noise and appearance of a huge, rumbling, string of railroad cars' " is such an obvious danger. See *McKinney*, 510 N.E.2d at 389-90; *Holland*, 431 A.2d at 603 (both quoting *Herrera v. Southern Pacific Ry. Co.*, 10 Cal. Rptr. 575, 580 (Cal. Dist. Ct. App. 1961)). This court long ago recognized that *Kahn* and its progeny harmonized Illinois law with the general principles expressed in section 339 of the Restatement (Second) of Torts. *Corcoran*, 73 Ill. 2d at 326. Persuaded by the *Fitzgerald* and *LeBeau* decisions of our appellate court, in harmony with the majority of jurisdictions, we now explicitly recognize as a matter of law that a moving train is an obvious danger that any child allowed at large should realize the risk of coming within the area made dangerous by it. *La Salle National Bank v. City of Chicago*, 132 Ill. App. 3d 607 (1985), and *Engel v. Chicago & North Western Transportation Co.*, 186 Ill. App. 3d 522 (1989), are hereby overruled.

¶ 36    We observe that during his case in chief, plaintiff testified as follows:

"Q. Now, while you were standing there grabbing for these [boxcar] ladders, what was going through your mind?

A. I thought that I was going to get on the train, ride it for a couple of feet, and then I was going to get off, and everything would be fine."

On redirect, plaintiff was asked: "And as you stood there, did you have any thought that you might lose your leg as a result of grabbing on that ladder?" Plaintiff answered: "Not a thought whatsoever."

¶ 37    Based on this and other testimony, the appellate court reasoned that the record contained conflicting evidence as to whether plaintiff appreciated the *full* risk of harm at the time he was injured, thereby precluding a judgment *n.o.v.* in favor of defendants. 2011 IL App (1st) 100209, ¶¶ 65-66.

¶ 38    We disagree. This court has explained as follows:

"The issue in cases involving obvious dangers, like fire, water or height, is not whether the child does in fact understand, but rather what the [landowner] may reasonably expect of him. [Citations.] The test is an objective one, grounded partially in the notion that parents bear the primary responsibility for the safety of their children. Stated again, where a child is permitted to be at large, beyond the watchful eye of his parent, *it is reasonable to expect* that that child can appreciate certain particular dangers." (Emphasis in original.) *Mt. Zion State Bank*, 169 Ill. 2d at 126-27.

Further, knowledge of the obvious danger, or appreciation of the risk, does not require the clairvoyance to foresee the precise injury which in fact occurred. See *Shull v. Harristown Township*, 223 Ill. App. 3d 819, 826-27 (1992); *Alston v. Baltimore & Ohio R.R. Co.*, 433 F. Supp. 553, 569 n.102 (D.D.C. 1977).

¶ 39    It has never been part of our law that a landowner may be liable to a trespasser who proceeds to wantonly expose himself to unmistakable danger in total disregard of a fully understood risk, simply for the thrill of the venture. *Alston*, 433 F. Supp. at 570. We conclude that the third element of the child trespasser exception to the no-duty rule has not been satisfied.

¶ 40                            *Expense of Remedying Dangerous Condition*

¶ 41    We complete our analysis of defendants' duty to plaintiff by considering whether the expense and inconvenience of remedying the dangerous condition is slight when compared to the risk to children. *Mt. Zion State Bank*, 169 Ill. 2d at 116-17; *Kahn*, 5 Ill. 2d at 625; accord Restatement (Second) of Torts § 339(d) (1965). At trial, each side presented an expert witness who testified as to the relative burdens and benefits of erecting fencing and related structures such as overpasses to remedy the risk of children jumping onto moving trains. Plaintiff's expert testified that fencing between Central and Ridgeland Avenues would suffice, while defendants' expert testified that fencing would have to be erected along the entire right-of-way. The appellate court concluded that plaintiff's expert testimony was sufficient for the jury to find that plaintiff's proposed remedy would have prevented his injury, which precludes a judgment *n.o.v.* in favor of defendants. 2011 IL App (1st) 100209, ¶¶ 68-84.

¶ 42    We disagree. Again, the existence of a duty "is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court. It is no part of the province of a jury ***." Prosser and Keeton on Torts § 37, at 236 (W. Page Keeton *et al*. eds., 5th ed. 1984). This issue is an element of the analysis recognized by *Kahn* and its progeny, in accord with section 339 of the Restatement (Second) of Torts. If the test is satisfied, a duty of reasonable care to a trespassing child is imposed on a landowner. Absent this, the landowner owes no such duty. Again, this duty determination is a question of law for the court and not for a jury. *Mt. Zion State Bank*, 169 Ill. 2d at 116.

¶ 43    Courts have generally answered in the negative the question whether the expense and inconvenience of remedying this dangerous condition is slight when compared to the risk to

-10-

children. "A railroad company does not have a duty to fence its property to prevent trespassing children from boarding its moving trains." *Frazee v. St. Louis-San Francisco Ry. Co.*, 549 P.2d 561, 565 (Kan. 1976); accord *Holland*, 431 A.2d at 603 n.11 (collecting cases); *Alston*, 433 F. Supp. at 559 n.28 (collecting cases); Wade R. Habeeb, Annotation, *Railroad's Liability for Injury to or Death of Child on Moving Train Other Than As Paying or Proper Passenger*, 35 A.L.R.3d 9, § 4(a) (1971). Courts have essentially explained that if a duty were imposed on a railroad to erect a fence where one accident occurred, the railroad "would likewise be subject to the duty of fencing the innumerable places along its many miles of tracks frequented by trespassing children." *Dugan v. Pennsylvania R.R. Co.*, 127 A.2d 343, 348 (Pa. 1956). We hold that Illinois law does not impose any such requirement. See *Illinois State Trust Co. v. Terminal R.R. Ass'n of St. Louis*, 440 F.2d 497, 501 (7th Cir. 1971) (applying Illinois law).

¶ 44     We reach this conclusion even considering plaintiff's own testimony. Plaintiff and his friends paid no attention to the existing fence segments; they paid no attention to the posted warning sign; they were not even trying to get to the other side of the tracks. Rather, plaintiff admitted that he was trying to impress his friends. No fence would have prevented such bravado. See, *e.g.*, *Nolley v. Chicago, Milwaukee, St. Paul & Pacific R.R.*, 183 F.2d 566, 569 (8th Cir. 1950).

¶ 45     In sum, because plaintiff was a trespasser, defendants owed him no duty of reasonable care, except to refrain from willfully and wantonly injuring him, which plaintiff does not allege. Because plaintiff was a child, *Kahn* and its progeny provide an exception to the "no duty" rule, and would impose on defendants a duty of reasonable care toward plaintiff, if its required elements were satisfied. This determination of defendants' duty is a question of law for the court; the circuit and appellate courts committed reversible error in viewing defendants' duty to plaintiff as an issue of fact for the jury to determine. We hold that this exception is not available to plaintiff. It is always unfortunate when a child gets injured while playing, but the responsibility for a child's safety lies primarily with his parents, whose duty it is to see that the child does not endanger himself. *Driscoll v. C. Rasmussen Corp.*, 35 Ill. 2d 74, 79 (1966). Thus, as a matter of law, defendants did not owe plaintiff a duty.

¶ 46     Because defendants did not owe plaintiff a legal duty, we hold that they were entitled to a judgment *n.o.v.* See *Washington*, 188 Ill. 2d at 238-39. Therefore, the judgments of the appellate and circuit courts are reversed without remand. See *Harris*, 2012 IL 112525, ¶ 26. Accordingly, we need not address defendants' alternative contention that they are entitled to a new trial.

¶ 47                                    III. CONCLUSION

¶ 48     For the foregoing reasons, the judgments of the appellate court and the circuit court of Cook County are reversed.

¶ 49     Judgments reversed.

**Dissenting Opinion Upon Denial of Rehearing**

¶ 50     CHIEF JUSTICE KILBRIDE, dissenting:

¶ 51     Although I initially joined in the opinion in this case, I believe that plaintiff presents arguments in his petition for rehearing that warrant this court's consideration. In particular, I agree with plaintiff's contention that the opinion contravenes the public policy established by this court in *Kahn v. James Burton Co.*, 5 Ill. 2d 614 (1955).

¶ 52     In *Kahn*, this court recognized the general rule that a landowner has no duty to keep the property safe for trespassers of any age. Nonetheless, we recognized in *Kahn* an exception to this rule that applied to trespassers who are children when the property contained a dangerous structure or condition. Specifically, this court held that the law imposes a duty on a landowner "to exercise due care to remedy the [dangerous] condition or otherwise protect the children from injury resulting from it." *Kahn*, 5 Ill. 2d at 625.

¶ 53     The child trespasser exception recognized by this court in *Kahn* is applicable when: (1) a landowner knows, or should know, that children habitually frequent the property; (2) a defective structure or dangerous condition exists on the property; (3) the defective structure or dangerous condition is likely to injure children because they are incapable of appreciating the risk involved based on their age and immaturity; and (4) the expense and inconvenience of remedying the defective structure or dangerous condition is slight compared to the risk to children. Ultimately, this court explained that the rationale underlying the child trespasser exception, and therefore justifying the imposition of liability on the landowner for a child trespasser's injuries, is "the foreseeability of harm to the child." *Kahn*, 5 Ill. 2d at 625.

¶ 54     In a later decision, we reiterated that *Kahn* "established the foreseeability of harm to children as the cornerstone of liability." *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 325-26 (1978). Subsequently, the child trespasser exception, grounded in the foreseeability of harm to children, has become settled law in Illinois. *Corcoran*, 73 Ill. 2d at 325; *Feldscher v. E&B, Inc.*, 95 Ill. 2d 360 (1983); *Cope v. Doe*, 102 Ill. 2d 278 (1984); *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110 (1995).

¶ 55     In this case, it is undisputed that plaintiff was a child trespasser and that defendant's property contained a dangerous condition, namely, a moving train. Thus, a straightforward application of *Kahn* means that defendant had a duty to "to exercise due care to remedy the condition or otherwise protect [plaintiff] from injury resulting from it." *Kahn*, 5 Ill. 2d at 625.

¶ 56     The court's decision here, however, reaches the opposite conclusion. It concludes, *inter alia*, that defendant owed plaintiff no duty, and holds, for the first time by this court, that a moving train is a *per se* obvious danger that poses a risk that any child allowed at large should appreciate. *Supra* ¶¶ 35-36.

¶ 57     In my opinion, as plaintiff argues in his petition for rehearing, this court's holding is clearly erroneous under the undisputed facts of this case and contradicts our core holding in *Kahn*—the basis for imposing liability under the child trespasser exception is "the foreseeability of harm to the child." *Kahn*, 5 Ill. 2d at 625; *Corcoran*, 73 Ill. 2d at 325-26. Here, the uncontested facts establish that defendant railroad company knew that children, including the plaintiff, were regularly and repeatedly trespassing on its property. These

trespassing children attempted to board moving trains and climb over, or through, trains. In other words, not only was it foreseeable to defendant that children were trespassing and engaging in dangerous conduct that could harm them, but defendant had *actual knowledge* of the situation. Indeed, defendant voluntarily took steps to prevent children from trespassing, albeit unsuccessfully.

¶ 58      Although Illinois law exempts landowners from protecting child trespassers from obvious risks and dangers on the property, until this decision, this court recognized only three *per se* examples of an obvious danger—fire, drowning in water, and falling from a height. *Supra* ¶ 32 (citing *Mt. Zion State Bank*, 169 Ill. 2d at 118). After considering the facts of this case, I no longer believe that this court should add a moving train to that list.

¶ 59      I emphasize that defendant here had *actual knowledge* that children were trespassing on its property and interacting with moving trains. On these facts, how can this court possibly conclude that defendant could *not* foresee harm to children? If *Kahn*'s recognition of the child trespasser exception is truly based on "foreseeability of harm" to children, this court must reconsider its decision here.

¶ 60      There are countless miles of railroad tracks in Illinois, including commuter lines in our densely populated urban and suburban areas. Our decision here effectively absolves landowners of any liability when trespassing children are injured by a moving train on their property, even when the landowner has actual knowledge of the situation. In other words, landowners are now free to ignore completely trespassing children who may be subjecting themselves to serious physical harm through foolish interactions with a moving train.

¶ 61      The opinion claims that "we now explicitly recognize as a matter of law that a moving train is an obvious danger that any child allowed at large should realize the risk of coming within the area made dangerous by it," but that statement leaves many unanswered questions. What constitutes a "moving" train under our new rule? Does it matter how fast or how slow the train is moving? What if the train is moving only one mile per hour and a child is hurt while trying to "beat the train" across the tracks?

¶ 62      Furthermore, what does the phrase "any child allowed at large" mean? Does it only apply to minors under 18? What about individuals, children or adults, with limited mental capacity or mental health issues? Does our holding mean that children who are allowed to roam outside by negligent parents no longer have any protection under the law for open and obvious dangers?

¶ 63      Finally, what is to limit an extension of this decision to other moving objects that pose obvious dangers, such as moving trucks, buses, or other vehicles? All of these unanswered questions reveal that the issue in this case is more complicated that I initially thought and should not be subject to a bright-line rule. In addition, by ignoring undisputed evidence that the property owner had actual knowledge that children were trespassing and subjecting themselves to harm from a moving train, this court's decision here contradicts the foundation of our holding in *Kahn* that focused on "foreseeability of harm to children."

¶ 64      Ultimately, these concerns suggest to me that, as the lower courts similarly concluded, the question of whether a moving train is an open and obvious danger, thereby precluding a finding of a legal duty, presents too many potential complicated factual scenarios for this

court to decide as a matter of law. Indeed, this court has recognized that "[t]he existence of an open and obvious danger is not a *per se* bar to finding that a defendant who owns, occupies or controls land has a duty to exercise reasonable care." *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 425 (1998). I believe when, as occurred here, a landowner has *actual knowledge* that children are trespassing and subjecting themselves to injury from a moving train, the law should impose a duty on that landowner to exercise reasonable care. Accordingly, I would allow plaintiff's petition for rehearing to reconsider our holding here.