2023 IL App (1st) 220598-U

No. 1-22-0598

Order filed November 16, 2023

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| GREGORY YERSICH, a Minor by his Mother, JESSICA YERSICH, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 20 L 2162 |
| THE CITY OF CHICAGO, | ) ) ) | Honorable Preston Jones Jr., |
| Defendant-Appellee. | ) ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.[1]
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We reversed the trial court's grant of summary judgment in favor of defendant and remanded for further proceedings, where a question of material fact existed as to whether the condition that caused plaintiff's injury was open and obvious and whether the distraction exception applied.

¶ 2    Plaintiff Gregory Yersich, a minor, through his mother Jessica Yersich, appeals the trial

court's grant of summary judgment for defendant, the City of Chicago, on plaintiff's negligence

_____
[1] This case was sent to Presiding Justice Rochford's chambers on November 7, 2023.

claim arising from injuries he sustained when his scooter struck a pothole in a crosswalk.[2] Plaintiff contends that the trial court erred when it found that the pothole was open and obvious to his supervising parent, and therefore, defendant did not owe him a duty of care. We reverse the grant of summary judgment for defendant and remand for further proceedings.

¶ 3    On February 21, 2020, plaintiff filed a complaint claiming that on May 23, 2019, he fell and was injured when his scooter struck a pothole in the crosswalk at the intersection of 36th Street and Wallace Street in Chicago. Plaintiff alleged that defendant failed to exercise ordinary care in keeping and maintaining the public way in a reasonably safe condition. Plaintiff further alleged that defendant carelessly and negligently maintained, kept, and controlled the street and permitted the crosswalk to remain in a condition that resulted in injury to plaintiff, and that defendant knew, or in the exercise of ordinary care should have known, the condition of the street and crosswalk. Plaintiff sought damages and reimbursement for medical bills.

¶ 4    Jessica testified in her deposition that she had three children, plaintiff, Lincoln, and Braxton. In May 2019, plaintiff was four years old, Lincoln was two, and Braxton was turning one. Around 10:30 a.m. on May 23, 2019, Jessica and the children were walking in a residential area on the way to McClellan School park. The weather was humid, and Jessica saw puddles and observed that woodchips were wet. Braxton was in the front seat of the stroller and Lincoln was in the back seat. Plaintiff was on a scooter, flush with the front seat of the stroller.

¶ 5    Jessica was familiar with the area and had been to McClellan School park a handful of times. The entrance to the park was about half a block from the "ramp" into the crosswalk. The

---

[2] For clarity, we will refer to Gregory Yersich as plaintiff and Jessica Yersich by her first name.

stroller was in front of Jessica and plaintiff was on her right side, next to the parkway. As Jessica approached the crosswalk, she watched for vehicles.

¶ 6     From the corner of her eye, Jessica saw plaintiff fall. The front two wheels of plaintiff's scooter became "stuck" in a pothole and he "went over his handlebars." Jessica moved the stroller out of the street and ran back to plaintiff, who was screaming. Plaintiff was subsequently transported to the hospital, where an x-ray revealed two breaks to the right arm.

¶ 7     Prior to the incident, Jessica did not see the pothole in the crosswalk because she was looking for vehicles. As she and her children entered the crosswalk, Jessica watched a vehicle approach and decelerate. The vehicle was on her left side and plaintiff was on her right. Jessica waited for the car to slow down, then she waved to the driver and walked through the crosswalk with her children. Jessica was still looking at the vehicle on her left when plaintiff fell.

¶ 8     Jessica did not recall having previously seen the pothole. Had Jessica seen it, she would not have told plaintiff to go around it because "it looked flat," *i.e.*, it did not appear to be a deep hole. She did not measure the dimensions of the pothole and did not know how long it had existed or whether it had been reported to defendant prior to the incident.

¶ 9     During her deposition, Jessica identified photographs of the crosswalk where the incident occurred. First, she identified photographs depicting plaintiff's scooter in the crosswalk, and explained that these photographs were taken by her husband a day or two after the incident. She also identified photographs of the intersection without the scooter, which also were taken by her husband. Jessica agreed that the photographs truly and accurately depicted the crosswalk as it appeared on May 23, 2019.

¶ 10 The photographs used in Jessica's deposition are contained in the record on appeal and this court has viewed them. All photographs are in color and depict a crosswalk. The photographs are taken from different vantage points and several of them depict a scooter in a small pothole in the crosswalk. In some of the photographs, the pothole appears to be filled with water; in other photographs, it is difficult to see inside the pothole. One of the photographs is taken from the vantage point of Jessica and plaintiff as they entered the crosswalk and approached the pothole. In this photograph, the scooter is standing upright inside the pothole. The depth of the pothole is difficult to discern from the photograph, but it does not seem to be particularly deep; the scooter appears virtually level with the street even though it is standing in the pothole. Jessica testified that the reflection off the water made it appear as if it was just a puddle on a flat surface of the crosswalk.

¶ 11 Plaintiff's paternal aunt, Morgan Hoffman, testified that the intersection where plaintiff fell was one block from where she lived in 2019, and she frequently crossed that street. When shown a photograph of the intersection, Hoffman identified a "hole" on the "park side" which had been there for a "long time," starting small and becoming bigger. She did not call defendant or the alderman to report the hole, but remembered it always being there and stepping around it. Hoffman had not observed anyone fall due to the defect.

¶ 12 Thomas Casa, an asphalt dispatcher for defendant, testified that paving season begins in April and ends by Thanksgiving. Once paving season ends, the paving crews become pothole crews and Casa may have up to 12 crews in his 13-ward district.

¶ 13 On February 14, 2019, 46 potholes were filled at 3451 South Wallace and the surrounding block, 2 potholes were filled at 3551 South Wallace and the surrounding block, 24 potholes were

filled at 3635 South Wallace and the surrounding block, and 63 potholes were filled at 3551 South Wallace and the surrounding block.

¶ 14    Casa was shown the photographs of the crosswalk and pothole. Casa stated that he was unable to determine the depth of the pothole from the photographs, but that it "looks shallow." Repair to the pothole would only have taken a couple of minutes and half a shovel of cold mix.

¶ 15    Anthony Scumaci testified that he had worked as an asphalt foreman for defendant since 2008. Scumaci identified a "daily asphalt pothole activity sheet" from February 14, 2019, which stated that 439 potholes were filled. Although 3551 South Wallace appeared as an address, that did not necessarily mean a pothole was at that location. He walked the blocks from 37th to 35th with the crew to make sure all potholes were filled, so he would have walked through the intersection of 35th and Wallace. He had no independent recollection of the crew filling the pothole in the crosswalk, but asserted that he did not miss potholes because he took his job seriously.

¶ 16    Defendant filed an answer and affirmative defenses. Defendant then sought leave to file a counterclaim for contribution against Jessica alleging that she negligently failed to supervise plaintiff at the time of his injury. The trial court granted defendant leave to file the counterclaim over plaintiff's objection. Plaintiff then filed a motion to dismiss the counterclaim as barred by the parent-child tort immunity doctrine.

¶ 17    On February 10, 2022, defendant filed a motion for summary judgment alleging that it owed plaintiff no duty of care where the dangerous condition—the pothole—was open and obvious. Plaintiff thereafter moved for summary judgment on certain affirmative defenses, alleging that defendant was not entitled to discretionary immunity when there was no evidence that one of defendant's employees knew of the pothole and decided not to fix it, and that plaintiff

was entitled to summary judgment on defendant's comparative negligence claim, as he was only four years old at the time of the accident.

¶ 18     On February 14, 2022, defendant filed a first amended answer and affirmative defenses alleging, relevant here, that the "property described" in plaintiff's complaint was maintained in reasonably safe condition, that defendant lacked actual or constructive notice of any alleged defect, and that the defect was repaired on February 14, 2019. Additionally, plaintiff was injured because of Jessica's negligence in failing to properly watch for an "area in the public way" that was open and obvious.

¶ 19     On April 12, 2022, the trial court addressed defendant's motion for summary judgment. The trial court determined that no genuine issue of material fact existed as to the pothole or the events preceding plaintiff's fall, and therefore, the question was whether the pothole constituted an open and obvious danger as a matter of law. The court concluded that the photographs included as exhibits in Jessica's deposition show a clearly visible pothole, and the presence of water in the pothole did not render the danger less open or obvious. Moreover, even if plaintiff was too young to appreciate the danger posed by the pothole, he was under Jessica's supervision and she had the duty to protect him from the open and obvious danger it posed. The court found the distraction exception inapplicable when, although Jessica may have been preoccupied by traffic as the family entered the crosswalk, it was not objectively reasonable to expect that traffic would cause her to fail to see the pothole and recognize the danger. The court further noted that potholes and similar pavement imperfections are a "fact of life in Chicago."

¶ 20     To the extent plaintiff argued that the existence of an open and obvious danger was not a *per se* bar to a finding of duty, the court found that in this case, given the nature and ubiquity of

potholes in Chicago, protecting all pedestrians from their danger would place an "immense burden" on defendant and require a "massive" allocation of resources. The court therefore concluded that defendant did not owe plaintiff a duty to protect him from the open and obvious danger posed by the pothole, and granted defendant's motion for summary judgment. Based upon the grant of summary judgment in defendant's favor, the court found all remaining motions moot.

¶ 21    On appeal, plaintiff contends that the trial court erred when it found that the condition that caused his injury was open and obvious to his supervising parent and, therefore, defendant did not owe him a duty of care. Plaintiff contends that it was reasonably foreseeable that a child would be injured riding a scooter over the pothole in the crosswalk even if supervised by a parent. He further contends that defendant owed him a higher duty of care because it knew children frequented the area, and that defendant's duty of care to a child is not absolved merely because the child is supervised by a parent.

¶ 22    Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "To survive a motion for summary judgment, the nonmoving party need not prove his case at this preliminary stage of litigation; however, the plaintiff must present some evidentiary facts to support each element of his cause of action, which would arguably entitle him to a judgment." *Marquardt v. City of Des Plaines*, 2018 IL App (1st) 163186, ¶ 16.

¶ 23    "On appeal from an order granting summary judgment, a reviewing court must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether summary judgment is proper as a matter of law." *Monson v.*

*City of Danville*, 2018 IL 122486, ¶ 12. We review the trial court's grant of summary judgment *de novo*. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 24      In a negligence action, a plaintiff must plead and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. "The existence of a duty under a particular set of circumstances is a question of law for the court to decide." *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 22; see also *Ward v. Kmart Corp.*, 136 Ill. 2d 132, 140 (1990). Absent a duty, a plaintiff cannot recover on his negligence claim. *Choate*, 2012 IL 112948, ¶ 22.

¶ 25      When evaluating whether a duty exists a court should consider (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden on the defendant. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 18; see also *Kun Mook Lee v. Young Rook Lee*, 2019 IL App (2d) 180923, ¶ 13 (the court should consider whether a relationship existed between the parties that imposed a legal obligation upon the defendant for the benefit of the plaintiff). The weight to be given to these factors depends on the circumstances of each particular case. *Simpkins*, 2012 IL 110662, ¶ 18.

¶ 26      The Local Governmental and Governmental Employees Tort Immunity Act provides that defendant, as a "local public entity," "has the duty to exercise ordinary care to maintain its property in a reasonably safe condition." 745 ILCS 10/3-102(a) (West 2020). Defendant does not, however, have a duty to protect against injury from a dangerous condition that is open and obvious. *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44 (2003). An open and obvious condition is one where the condition and risk are apparent to, and appreciated by, a reasonable person "exercising ordinary

perception, intelligence, and judgment." (Internal quotation marks omitted). *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 435 (1990).

¶ 27    Defendant argues that the four-year-old plaintiff was old enough to appreciate the open and obvious risk of riding his scooter over the pothole filled with water and, as such, that it owed him no duty of care. Our supreme court has held that a landowner has the duty to remedy a dangerous condition on its premises that is "likely to cause injury to the general class of children who, by reason of their age and immaturity, would not be expected to comprehend and avoid the attendant risks." *Choate*, 2012 IL 112948, ¶ 31.  The landowner has no duty to remedy a dangerous condition presenting "*obvious* risks that children generally of the plaintiff's age would be expected to appreciate and avoid." (Emphasis in original). The landowner may rely on the assumption that " 'any child *old enough to be allowed at large by his parents* will appreciate certain obvious dangers or at least make his own intelligent and responsible choice concerning them.'" (Emphasis added) *Id.* (quoting *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 117 (1995)). Obvious dangers include fire, drowning in water, or falling from a great height. *Id.* ¶ 32.

¶ 28    In the case at bar, plaintiff was not old enough to be "at large" crossing a crosswalk on his scooter by himself, but instead was a four-year-old under the supervision of his parent and as such, defendant could make no assumptions about his general ability to perceive any obvious danger arising from the pothole. Furthermore, the danger posed by the pothole did not involve fire, drowning, a fall from a great height, or any other obvious danger that has been held to be appreciable even by a child of a tender age; rather, the danger posed was a fall on the uneven surface of the pothole. However, the uneven surface and the depth of the pothole is not readily

apparent from the photograph of the crosswalk and pothole as seen from plaintiff's perspective, and Jessica testified that the water inside the pothole made it appear to be merely a puddle on a flat surface of the crosswalk. We decline to hold as a matter of law that the four-year-old plaintiff should have perceived the open and obvious danger of riding his scooter over what arguably appeared to him to be a mere puddle of water. At the very least, a question of fact exists regarding whether the danger presented was open and obvious to the four-year-old plaintiff. See also Prosser and Keeton on The Law of Torts at 407-408 (W. Page Keeton *et al.* eds., 5th ed. 1984) ("When an infant of three or four is known to be in the vicinity of fire or water, or other dangerous conditions, it is 'pure fantasy, straight from outer space' to say that he will be fully able to protect himself against them.").

¶ 29    Defendant also argues that, even assuming plaintiff was too young himself to appreciate the open and obvious risk of riding his scooter over the pothole, defendant breached no duty of care to him because it reasonably could rely on his supervising parent, Jessica, to appreciate the risk and steer plaintiff away from it. Defendant posits that the photographs depicting the crosswalk indisputably show the physical nature of the dangerous condition, *i.e.*, the pothole filled with water, which as a matter of law should have been open and obvious to Jessica.

¶ 30    Whether a dangerous condition is open and obvious is a question of law when no dispute exists as to the physical nature of the condition. *Bruns*, 2014 IL 116998, ¶ 18. However, "where there is a dispute about the condition's physical nature, such as its visibility, the question of whether a condition is open and obvious is factual." (Emphasis added). *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1053 (2010). In this context, "obvious" means that both the

condition and the risk are apparent and recognizable by a reasonable person. *Bruns*, 2014 IL 116998, ¶ 16.

¶ 31 The photographs of the crosswalk contained in the record on appeal are from a number of different vantage points, but the relevant one is the photograph depicting the pothole from the vantage point of Jessica and plaintiff as they were entering the crosswalk side by side and as they were approaching the pothole. That photograph depicts the scooter standing inside a pothole in the crosswalk, but the depth of the pothole, *i.e.*, the risk to plaintiff that he might fall if he were to ride his scooter over the pothole, cannot easily be discerned. The scooter appears almost level with the street even though it is standing in the pothole. Defendant's employee, Casa, testified that the photographic evidence was inconclusive as to the depth of the pothole but that it appeared shallow. Jessica testified that "the pothole had water in it and then there was the reflection, so it looked flat" and that the water prevented one from seeing the depth of the pothole.

¶ 32 The difficulty in assessing the depth of the pothole and of the concomitant risk posed in riding a scooter over it presents a question of fact as to its open and obvious nature. *Alqadhi*, 405 Ill. App. 3d 14, is informative. There, the plaintiff tripped and fell over a 3/4 -inch rise in concrete on a ramp near the exit to defendants' garage. *Id.* at 15. Defendants moved for summary judgment on the basis that the condition causing the plaintiff's injury was open and obvious. *Id.* Defendants contended that the area was "well lit" and that the pavement was smooth and that the rise in concrete was visible. *Id.* at 18. The plaintiff responded by pointing to her own deposition testimony that the dim lighting in the garage and the lack of color contrast in the raised concrete created the optical illusion of a flat walking surface. *Id.* at 16. The trial court granted summary judgment for

defendants. *Id.* at 16. We found that the visibility of the condition was in dispute, and therefore reversed the grant of summary judgment and remanded for further proceedings. *Id.* at 19.

¶ 33    Similarly, in the instant case, the visibility of the depth of the pothole was in dispute such that we cannot say as a matter of law that the risk posed to plaintiff in riding his scooter over the pothole was so open and obvious to Jessica as to obviate defendant's duty of care.

¶ 34    Even if the risk posed to plaintiff in riding his scooter over the pothole *was* open and obvious to Jessica, there is also a question of material fact as to whether the distraction exception to the open and obvious doctrine applies here. The distraction exception applies when defendant reasonably could foresee that Jessica might be so distracted when approaching the pothole that she would fail to protect plaintiff from riding his scooter over it. *Negron v. City of Chicago*, 2016 IL App (1st) 143432, ¶ 17. Jessica testified to just such a distraction, specifically, that she was watching vehicular traffic on her left when plaintiff rode his scooter over the pothole and fell. Jessica's testimony raises a question of material fact as to whether defendant reasonably should have foreseen that a parent accompanying her children across the crosswalk would be checking for traffic on the adjoining city street and, hence, be so distracted as not to notice the pothole at their feet.

¶ 35    Defendant argues that it did not create the distraction, *i.e.*, the vehicular traffic, and thus it should not be held responsible therefor. However, a showing that defendant somehow contributed to the distraction is not required for the exception to apply, as long as the distraction is reasonably foreseeable. *Id.* ¶ 20; *Clifford v. Wharton Business Group, L.L.C.*, 353 Ill. App. 3d 34, 45 (2004).

¶ 36    Defendant also argues that vehicular traffic is a commonplace event, and that where a distraction is a commonplace event that could occur anywhere, landowners generally are not

required to guard against it. *Id.* ¶ 19. The rationale is that defendant could not reasonably anticipate that a commonplace event would be so distracting as to divert a plaintiff's attention away from an open and obvious danger. See *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1031 (2005) (defendant owes no duty to plaintiff to prevent her from being injured by an open and obvious danger, even where she was distracted at the time of injury, where the distraction could not reasonably be anticipated). In the present case, though, a question of material fact exists as to whether defendant reasonably should have anticipated and foreseen Jessica being distracted by the ordinary vehicular traffic approaching her as she was leading her children across the crosswalk. Specifically, the evidence here shows that defendant placed the crosswalk across a city street, near a park frequented by children and their parents, knowing that parents would be crossing the crosswalk with their children; Casa testified to seeing children riding scooters in the crosswalk. The vehicular traffic at issue here was not some distance away from the crosswalk, posing no immediate safety risk to Jessica or her children; rather, Jessica was taking note of an automobile to her immediate left, ensuring that it was coming to a stop before she and her children (including plaintiff) utilized the crosswalk to cross the street. On these facts, there is a question as to whether defendant reasonably should have foreseen and anticipated that the vehicular traffic near the crosswalk would be so distracting as to cause Jessica not to notice the pothole prior to plaintiff's riding his scooter over it.

¶ 37 Application of the open and obvious rule (and the distraction exception) affects the first two elements of the duty analysis: the foreseeability of harm and the likelihood of the injury. Where the dangerous condition is open and obvious, and the distraction exception is not applicable, the foreseeability of harm and the likelihood of injury is slight, thereby weighing against the

imposition of a duty. *Bruns*, 2014 IL 116998, ¶ 19. However, as we have discussed, there is a question of material fact here as to the open and obvious nature of the pothole (as well as the applicability of the distraction exception) and the risk that the pothole posed to plaintiff as he rode his scooter over it.

¶ 38    The third and fourth elements of the duty analysis are the magnitude of guarding against the injury and the consequences of placing that burden on defendant. *Id.* ¶ 14. Defendant argues that it should not be required to guard against open and obvious potholes in crosswalks, as defendant's limited resources would be better served in protecting against less obvious (and hence, more dangerous) roadway hazards "that pose the most serious safety risks." As discussed, though, a question of fact exists as to whether the pothole here was open and obvious and, thus, easily avoidable or whether it was a type of roadway hazard posing the most serious safety risks. Also, Casa testified that numerous potholes were repaired in the area surrounding the crosswalk three months prior to plaintiff's injury, and that the repair here to the pothole in the crosswalk would have taken only a couple of minutes and half a shovel of cold mix. At the very least, there is a question of material fact regarding whether the magnitude and consequences of repairing the pothole in the crosswalk were so onerous as to obviate defendant's duty toward plaintiff.

¶ 39    For all the foregoing reasons, we reverse the grant of summary judgment in favor of defendant and remand for further proceedings.

¶ 40    Reversed and remanded.