ILLINOIS OFFICIAL REPORTS

## *Ballog v. City of Chicago*, 2012 IL App (1st) 112429

| | |
|---|---|
| Appellate Court Caption | ELEANOR BALLOG, Plaintiff-Appellant, v. THE CITY OF CHICAGO, a Municipal Corporation, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-2429 |
| Filed | October 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendant city in an action for the broken foot plaintiff suffered when she fell on a city street, since the gap in the street that caused her fall was an open and obvious condition that required her to exercise reasonable care for her own safety, and the deliberate encounter exception did not apply. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-12290; the Hon. Mary Mulhern, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Joseph V. Roddy and Jeane N. Brown, both of Law Offices of Joseph V. Roddy, of Chicago, for appellant. |
| | Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Justin A. Houppert, Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE GARCIA delivered the judgment of the court, with opinion. |
| | Presiding Justice Lampkin and Justice Hall concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff Eleanor Ballog appeals from the circuit court's grant of summary judgment to defendant City of Chicago (the City) in her suit charging the City with negligence. The plaintiff fractured

her foot when she tripped as she stepped from the portion of the street that had been excavated, refilled with concrete, but not resurfaced. We append two photographs of the location, identified as "Plaintiff's Exhibit #1" and "Plaintiff's Exhibit #5." The plaintiff marked plaintiff's Exhibit No. 5 to show where she landed on the connecting sidewalk when she fell. The plaintiff contends summary judgment was precluded because two material questions of fact remain: (1) whether the condition that caused the plaintiff to fall was an open and obvious condition; and (2) whether the deliberate encounter exception to the open and obvious doctrine applied. We hold the condition of the street was open and obvious as a matter of law where the parties do not dispute the physical nature of the condition and the exception did not apply where no deliberate encounter occurred. We affirm.

¶ 2                                  BACKGROUND

¶ 3     On August 17, 2008, the plaintiff was injured in a fall at the intersection of North Leavitt Street and West Belle Plaine Avenue in Chicago. At her deposition on November 13, 2009, the plaintiff testified that at 11:15 a.m., she left her residence to walk five blocks to attend church services. She identified several photographs that depicted the intersection where she fell. Asked to describe how she fell, the plaintiff stated that she did not see the gap in the street as she crossed Belle Plaine Avenue in the crosswalk, as she walked southbound on Leavitt. She was "admiring" the construction that had been completed at the intersection, which had been ongoing for six months. During the construction, she had observed warning signs on the streets. When she walked to church while the streets were under construction, she would "walk in the middle of the street" instead of using the

-3-

crosswalk at the intersection. She could not recall if she had walked to church the week before the incident and could not recall the last time she was in the area prior to her fall. The plaintiff always walked the same route to attend church. She stated that she was familiar with the area and traveled in that location "[e]very week, or every two weeks" for years.

¶ 4     On the date the plaintiff fell, it was a beautiful, dry August day. The plaintiff testified, "There [were] no signs saying there was construction still, nothing. As I was walking, I had canvas shoes on, lightweight. It was summer." She continued, "There was nothing to say that anything was wrong with the streets. My foot went on the edge of the–that was up, twisted, I fell to my knees, and couldn't remember the rest because I woke up and I was in a lady's arms." When asked whether anything distracted her immediately prior to her fall, the plaintiff answered, "The niceness of the streets, the clean up." Before she fell she "was looking towards the church," that was "[a]head of [her]." She stated that she did not see the unfilled portion of the street until she fell. When asked what caused her to fall, the plaintiff responded, "the street wasn't finished. The construction was not done." The plaintiff was asked, "[B]efore the accident, if you were looking down, were you able to see [the gap in the street]?" The plaintiff answered, "From crossing, no. You just thought to yourself it's done. Look how beautiful. That was it." The plaintiff fractured her right foot in the fall.

¶ 5     After the plaintiff fell, she observed the unfilled portion of the street. The plaintiff made clear that the gap where she tripped was not covered or obscured by leaves, debris, or anything else. According to the plaintiff, she could not see the gap as she entered the intersection because the elevated center of the street obscured

her view of the other side. A photograph of the intersection depicted in plaintiff's Exhibit No. 1 reveals that in addition to the gap that caused her fall, a similar gap in the surface of the street existed at the corner from where the plaintiff began her walk across Belle Plaine Avenue.

¶ 6     The plaintiff marked where she landed after she fell on plaintiff's Exhibit No. 5, a photograph of the intersection. The gap abutted the beginning of the sidewalk and ran some unspecified, but short distance into the street. Neither party provided the dimensions of the gap from the end of the surface covering of the street to the start of the sidewalk. Plaintiff's Exhibit No. 5 depicts a plainly visible elevation where the concrete of the sidewalk abuts the street. The plaintiff did not measure the height of the elevation from the gap to the concrete of the sidewalk that is visible on plaintiff's Exhibit No. 5.

¶ 7     Karin Meyers testified at her deposition on January 28, 2011, that on August 17, 2008, she was walking with her boyfriend to the grocery store and passed the plaintiff on the sidewalk as they walked in the same direction on Leavitt. "[A]nd then once we were halfway down the block after that intersection, we heard her fall." Meyers did not see the plaintiff fall, but as soon as she heard her fall, she "knew exactly what had happened 'cause I almost tripped at the same thing crossing that intersection." According to Meyers, at that same intersection, "I didn't fall, but I had taken a little, you know, stumble at this same exact spot." When asked to describe how she stumbled, Meyers responded, "I think it was the edge of the road and then not getting my foot up for the edge of the curb in time, and so the tripping on the edge of the curb there in that ditch that's between the street and the sidewalk." Meyers described the "ditch" as a "nonfilled-in area between the street

and the sidewalk." Meyers did not see the gap until after she stumbled on it. She did not recall seeing any warning signs or barriers at the intersection on the date of the incident. However, the area was not covered or obscured by any debris.

¶ 8    After she heard the plaintiff fall, Meyers returned to the intersection to assist the plaintiff. According to Meyers, the plaintiff indicated she had fallen because of the "problem with the–you know, not being filled in right between the street and the curb." The City's attorney asked Meyers if she could recall the height difference between the downward slope of the sidewalk at the curb and the gap. Meyers responded, "I doubt it was more than two inches, but maybe around two inches. The problem is that it dips down and then–you've got this unexpected dip down even if it's not very deep and then an unexpected dip up or step up that's just a few feet–you know, just like a foot later, and so if you're walking in a normal distance between your feet, one of those is going to get tripped up either going in or going out." She stated that it was difficult to see the gap when approaching from the opposite side of the street. Meyers identified the gap in the street in a photograph of the intersection: "I can see it looking at the photograph." However, she did not see the gap as she crossed the street because she was "expecting it to be like a normal street meeting the curb, so I was looking just up and about at, you know, trees or my boyfriend or whatever." Meyers did not know how long the gap was there prior to the plaintiff's fall. Meyers stated, "I mean it hadn't been there always. I have the sense that maybe it had been there for just a short time, maybe a week or something, I don't know because I hadn't been there–I don't think it had been there the previous time that I walked down there which was probably, you know, a couple of weeks beforehand."

¶ 9    On April 26, 2011, the City moved for summary judgment, arguing that the unfilled portion of the street was an open and obvious condition that did not give rise to a duty of care owed by the City to the plaintiff. The City contended the photographs and the plaintiff's testimony showed the gap was "clearly visible and any pedestrian walking along that portion of the crosswalk can see that part of the crosswalk was taken out." The City asserted that the open and obvious condition was not unreasonably dangerous; nor was it reasonable to require the City to anticipate that a pedestrian, in the exercise of ordinary care, would not have taken the precautions necessary to safely traverse the area. In other words, a reasonable person in the plaintiff's position would have seen the condition and appreciated the risk of walking over it.

¶ 10    In her response, the plaintiff argued that "a genuine issue of fact exists as to whether the excavated gap in the street was an open and obvious condition." According to the plaintiff, the deposition testimony established that neither she nor Meyers could see the gap in the crosswalk when walking toward it from the opposite side of the street. The plaintiff asserted the City should have placed warning signs or barriers at the crosswalk to notify pedestrians that construction was incomplete. The plaintiff contended that, even assuming the gap was an open and obvious condition, the deliberate encounter exception applied because the City should reasonably expect that pedestrians would utilize the crosswalk.

¶ 11    In its reply, the City raised its immunity under the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/3-104 (West 2010)) as to any contention that it should have placed warnings or barricades at the intersection. The City argued in its reply that section 3-104 of the

Act immunizes the City " 'against all liability arising from its failure to initially provide a traffic control device, even where such failure might endanger safety' " (quoting *Bonner v. City of Chicago*, 334 Ill. App. 3d 481, 487 (2002)). The City contested the plaintiff's claim that the deliberate encounter exception applied when no evidence was adduced that the plaintiff suffered from an economic compulsion to encounter the open and obvious condition. The City reiterated that the plaintiff is expected to exercise ordinary care for herself when confronted by the risk of injury from an open and obvious condition.

¶ 12    The circuit court granted the City's motion for summary judgment on August 9, 2011.

¶ 13    The plaintiff timely appealed.

¶ 14                              ANALYSIS

¶ 15    The plaintiff contends the circuit court erred in granting summary judgment to the City because two material questions of fact remain. First, whether the gap in the street constituted an open and obvious condition was a question for the trier of fact. Second, the trier of fact should also decide whether the deliberate encounter exception to the open and obvious condition applied. The plaintiff argues, "The obviousness of a condition of whether in fact the condition itself served as notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact." Even if the condition of the street was open and obvious as a matter of law, the plaintiff urges that the deliberate encounter exception applies in this case because it is reasonable to expect that pedestrians will use the crosswalk. According to the plaintiff, the photographs of record "clearly show that there simply was no

other safe way for Plaintiff to cross the intersection other than by using the crosswalk."

¶ 16    The City responds that the obviousness of the condition of the street means the City owed no duty to the plaintiff to protect her against the risk of falling as she stepped from the unfilled portion of the street. According to the City, the obviousness of the gap provided the plaintiff with adequate notice that she should exercise ordinary care to protect herself while traversing the gap. The City also disputes that the facts of this case warrant the application of the deliberate encounter exception to the open and obvious doctrine.

¶ 17                    Summary Judgment Review

¶ 18    Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that as a matter of law, the moving party is entitled to judgment. 735 ILCS 5/2-1005(c) (West 2010); *Ishoo v. General Growth Properties, Inc.*, 2012 IL App (1st) 110919. The purpose of summary judgment is not to answer a question of fact, but to determine whether one exists. *Garcia v. Wooton Construction, Ltd.*, 387 Ill. App. 3d 497, 504 (2008). "In determining whether a genuine issue of material fact exists, a court must construe the materials of record strictly against the movant and liberally in favor of the nonmoving party." *Harlin v. Sears Roebuck & Co.*, 369 Ill. App. 3d 27, 31 (2006). Summary judgment should not be granted unless the movant's right to judgment is free and clear from doubt. *Mitchell v. Special Education Joint Agreement School District No. 208*, 386 Ill. App. 3d 106, 111 (2008). We review the grant of summary judgment *de novo*. *American Family Mutual Insurance Co. v. Fisher Development, Inc.*, 391 Ill. App. 3d 521, 525 (2009).

¶ 19                     Open and Obvious Condition

¶ 20     The open and obvious doctrine addresses the essential element of duty in a negligence cause of action. *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 34; *Harlin*, 369 Ill. App. 3d at 31 ("The open and obvious doctrine speaks to the duty element[,] which *** is a central element of any negligence claim."). Absent a legal duty of care owed to the plaintiff, the defendant cannot be found negligent. *Washington v. City of Chicago*, 188 Ill. 2d 235, 239 (1999). "That is so because [u]nless a duty is owed, there is no negligence [citation], and plaintiffs cannot recover as a matter of law." (Internal quotation marks omitted.) *Id.*

¶ 21     Consequently, "[i]n any negligence action, the court must first determine as a matter of law whether the defendant owed a duty to the plaintiff." *Choate*, 2012 IL 112948, ¶ 34; *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). A duty of care arises when the law imposes "upon defendant an obligation of reasonable conduct for the benefit of plaintiff." *Ward*, 136 Ill. 2d at 140. With respect to conditions on land, generally there is no duty of care owed by the landowner regarding open and obvious conditions because the landowner "could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition." *Id.* at 148.

¶ 22     "The term '[o]bvious' denotes that both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." (Internal quotation marks omitted.) *Prostran v. City of Chicago*, 349 Ill. App. 3d 81, 85-86 (2004) (quoting *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 435 (1990), quoting Restatement (Second) of Torts § 343A cmt. b, at 219 (1965)). "Whether a condition is open and

obvious depends on the objective knowledge of a reasonable person, not the plaintiff's subjective knowledge." *Prostran*, 349 Ill. App. 3d at 86 (citing *Bonner*, 334 Ill. App. 3d at 484).

¶ 23    "[T]he requirement of an open and obvious danger is not merely a matter of the plaintiff's contributory negligence, or the parties' comparative fault, but rather a lack of the defendant's duty owed to the [plaintiff]." *Choate*, 2012 IL 112948, ¶ 34. "Where there is no dispute about the physical nature of the condition, whether a danger is open and obvious is a question of law." *Id*.

¶ 24    The City can reasonably expect pedestrians will exercise reasonable care for their own safety upon confronting an open and obvious condition, making it unnecessary for the City to take additional precautions for the benefit of pedestrians. *Ward*, 136 Ill. 2d at 156. The condition itself serves as notice of the danger and risk to trigger a pedestrian's "duty to exercise ordinary care for her own safety." *Prostran*, 349 Ill. App. 3d at 87; *Ward*, 136 Ill. 2d at 156; *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 447 (1996); *Bonner*, 334 Ill. App. 3d at 484.

¶ 25    The gap in the surface of the street is amply depicted in the photographs in the record, which make clear the nature of the condition. According to the plaintiff, that the nature of the condition is clear does not mean the condition was open and obvious as a matter of law. She asserts that while a reasonable person could conclude the gap in the street that she encountered was open and obvious, the issue should be resolved by a jury. The plaintiff relies on five cases for her position: *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 314 Ill. App. 3d 195 (2000); *Simmons v. American Drug Stores, Inc.*, 329 Ill. App. 3d 38 (2002); *Nickon v. City of Princeton*, 376 Ill. App. 3d 1095

(2007); *Duffy v. Togher*, 382 Ill. App. 3d 1 (2008); and *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14 (2010).

¶ 26 *Alqadhi* and *Duffy* are immediately distinguishable because in each case the plaintiff presented testimony of an expert to support the contention that the open and obvious condition raised a factual question, which this court expressly noted. *Alqadhi*, 405 Ill. App. 3d at 15, 17-18 ("the testimony of plaintiff's expert *** created a question of fact for the trier of fact"); *Duffy*, 382 Ill. App. 3d at 9 (plaintiff's expert testified the design of the pool was "very unusual," "unsafe for the ordinary pool user," and gave an "optical illusion of a deep end" (internal quotation marks omitted)). No such expert testimony was presented in this case.

¶ 27 Likewise, the facts in *Buchaklian* are too dissimilar to provide any support for the plaintiff's contention in this case. In *Buchaklian*, the "plaintiff tripped and fell in the area of [the] mat" in the women's locker room at the local YMCA. *Buchaklian*, 314 Ill. App. 3d at 198. The circuit court determined that the YMCA owed no duty to the plaintiff "based on the 'open and obvious condition' doctrine." *Id.* at 197. The plaintiff's fall was caused by "one particular piece of the mat *** standing up approximately an inch or two [higher] than the other portions of the mat." *Id.* at 198. The Second District reversed, disagreeing "with the trial court's conclusion that, as a matter of law, the defect in the mat was an open and obvious danger that plaintiff could have avoided had she looked down at the floor in the area where she was going instead of looking straight ahead." *Id.* at 202. While we have no dispute with the result reached in *Buchaklian*, the "defect in the mat," as described by the court, is too dissimilar to the condition here to provide any guidance.

¶ 28 In *Nickon*, the Third District rejected the numerous challenges

by the defendant municipality to the jury's verdict in favor of the plaintiff for injuries he sustained "after falling on a sidewalk located on Main Street in Princeton." *Nickon*, 376 Ill. App. 3d at 1097. Ultimately, the Third District rejected the municipality's final contention that it was entitled to a judgment notwithstanding the verdict "because the depression in the sidewalk was 'open and obvious.' " *Id.* at 1106. The *Nickon* court concluded that the condition of the sidewalk was for the jury to assess, which it did in finding the municipality liable. The *Nickon* court explained its ruling in light of the evidence before the jury. "The photographs entered into evidence show a small depression similar in color to the sidewalk, but partially covered by weeds. The photographs depict the depression was not visible until the photographer's camera was almost directly above the depression." *Id.* The court agreed with the plaintiff that "the issue of whether 'people on the property would not discover or realize the danger' of the depression was one of fact." *Id*. It is clear that the parties in *Nickon* disputed the physical nature of the condition, which rendered the open and obvious question one for the jury to resolve. No such contention is present in this case.

¶ 29     The remaining case cited by the plaintiff for her contention that "whether the condition itself serviced as notice of its presence *** [is] properly left to the trier of fact," is *Simmons*. This court in *Simmons* issued an unequivocal statement on the issue. "Whether a condition presents an open and obvious danger is a question of fact." *Simmons*, 329 Ill. App. 3d at 43. However, *Simmons* can no longer stand as good authority on that proposition. As the Illinois Supreme Court recently reaffirmed, only where there is a "dispute about the physical nature of the condition" is the issue of an open and obvious condition a question for the trier of fact to resolve. *Choate*, 2012 IL 112948, ¶¶ 33-35 (overruling appellate court

cases that held the question of whether children could appreciate "hopping a moving train was dangerous" was factual; the court ruled that as a matter of law proximity to a moving train was an open and obvious dangerous condition reasonably known to children); see also *Belluomini v. Stratford Green Condominium Ass'n*, 346 Ill. App. 3d 687, 692-93 (2004) ("where there is no dispute about the physical nature of the condition, the question of whether the condition is open and obvious is legal"); *cf. Alqadhi*, 405 Ill. App. 3d at 17-18 ("But, 'where there is a dispute about the condition's physical nature, such as its visibility, the question of whether a condition is open and obvious is factual.' " (quoting *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1053 (2010))).

¶ 30    The instant plaintiff, however, does not advocate that the "physical nature" of the gap in the street surface was disputed by the parties below. As a consequence, the cases the plaintiff cites provide no support for her position that the question of whether the gap in the street constituted an open and obvious condition was factual. *Choate*, 2012 IL 112948, ¶ 34; *Belluomini*, 346 Ill. App. 3d at 692-93; *Wilfong*, 401 Ill. App. 3d at 1053. Nor would we find such a dispute over the physical nature of the gap to be objectively reasonable given the clear condition of the street on both sides of Belle Plaine Avenue as depicted in the photographs in the record. As the photographs aided the court in *Nickon*, the photographs spread of record here confirm the physical nature of the condition was not subject to dispute.

¶ 31    The photographs in the record make clear that gaps in the surface of the street were present on both corners of the crosswalk on Belle Plaine Avenue at its intersection with Leavitt Street. The gap in the street on either corner of the crosswalk was patently

visible. At the very least, the existence of the very same condition of the street on the corner where the plaintiff began her walk placed her on notice that the same condition might well be present on the opposite side of the street. The plaintiff's deposition testimony conclusively established that she was able to safely traverse the very same condition that she encountered on the other side of the crosswalk on Belle Plaine Avenue, where she suffered her fall. The plaintiff does not explain why the gap in the street that caused her fall should be seen any differently from the same gap that she safely traversed on the opposite corner. The same condition on the corner where she entered the crosswalk rendered her assertion as unremarkable that the opposite side of the street could not be seen over the elevated center of the street as she began her walk across Belle Plaine. While the City does not dispute that the plaintiff could not see the opposite corner as she began to cross Belle Plaine, a reasonable person would take note that a similar open and obvious condition at the start of the crosswalk might well be present on the opposite side. This is particularly so where the plaintiff was familiar with the construction undertaken at the intersection of Belle Plaine and Leavitt, as she testified at her deposition, which caused her to "walk in the middle of the street" while the construction signs were posted. However, the physical nature of the condition where she fell did not differ from the condition that she was able to safely traverse on the opposite side of the street. The plaintiff was under the same duty imposed on all pedestrians of ordinary perception, intelligence, and judgment to exercise reasonable care for her own safety in traversing the same open and obvious condition at the end of the crosswalk that she encountered at the start. *Prostran*, 349 Ill. App. 3d at 87.

¶ 32      *Prostran*, which involved a negligence claim by a pedestrian

for an injury she sustained on the City's sidewalk, is instructive here. In *Prostran*, the plaintiff argued "that, due to her visual handicap, the defect in the sidewalk was not open and obvious and that, due to the general condition of the sidewalk, she did not see the specific rock upon which she tripped until after she fell." *Id.* at 85. This court concluded that the visual disability did not relieve her "of the duty to exercise ordinary care for her own safety." *Id.* at 87. "Given plaintiff's testimony, we find that both the condition of the sidewalk and the risk of walking on it were apparent to and would have been recognized by a reasonable person or by a reasonable person under like disability exercising ordinary perception, intelligence, and judgment. Plaintiff's visual impairment notwithstanding, the condition of the sidewalk was open and obvious." *Id.* at 87. We affirmed the grant of summary judgment.

¶ 33    We are further guided by this court's decision in *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1029 (2005). In *Sandoval*, the condition at issue was a "large five-by-six-foot section of the sidewalk [that] was missing most of its concrete surface, and the dirt underneath was exposed." *Id*. "While the dirt comprised a level surface, a big chunk of concrete remained, sticking upright some three to four inches from the dirt." *Id.* The plaintiff fell in the "crater-like" defect in the sidewalk and fractured her ankle. The *Sandoval* court held that "any reasonable person exercising ordinary care in visiting this area would recognize and appreciate the risk involved in traversing this portion of the sidewalk and, specifically, the changes in elevation." *Id*. We reached this conclusion based on the evidence in the record, which included photographs of the sidewalk. "From our review of the record, which contains descriptions and photographs of the area in question, it is clear that the defect was a condition of open and

obvious danger." *Id.* We affirmed summary judgment for the City.

¶ 34   In the instant case, had the plaintiff exercised ordinary care for her own safety, as she apparently did in traversing the very same gap in the street surface as she began to cross Belle Plaine Avenue, she would have been able to safely traverse the gap on the opposite side of the crosswalk. The existence of the gap on both corners forecloses any suggestion that the gap was unreasonably dangerous to demand additional precautions by the City. "[I]f people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous ***." (Internal quotation marks omitted.) *Ward*, 136 Ill. 2d at 148. The City had no duty to "remove all dangers" from the crosswalk in order to avoid liability. *Id.* at 142. It would be impossible for the City to render the streets "injury-proof." *Id.* at 156.

¶ 35   On *de novo* review, we agree with the circuit court that the condition of the street was open and obvious as a matter of law.


¶ 36                     Deliberate Encounter Exception

¶ 37   The plaintiff argues that if we conclude that the condition of the street to be open and obvious as a matter of law, then whether the deliberate encounter exception applies raises a question of fact for a jury to resolve. In support, she asserts the crosswalk was the prescribed means of crossing the intersection and the photographic evidence establishes "there simply was no other safe way for Plaintiff to cross the intersection other than by using the crosswalk."

¶ 38   The deliberate encounter exception "arises when the landowner 'has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his

-17-

position the advantages of doing so would outweigh the apparent risk.' " *Wilfong*, 401 Ill. App. 3d at 1054 (quoting Restatement (Second) of Torts § 343A(1) cmt. f, at 220 (1965)). The deliberate encounter exception applies when, as the name suggests, the encounter is deliberate. *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 394-96 (1998) (where the court formally adopted the exception, while noting that a "deliberate choice" is involved); see *Garcia v. Young*, 408 Ill. App. 3d 614, 617 (2011) (deliberate encounter exception inapplicable where the "pothole" that constituted the open and obvious condition was never noticed by the plaintiff until after he was injured). If the deliberate encounter exception applies, then a duty of care exists. *LaFever*, 185 Ill. 2d at 398.

¶ 39    To determine whether an exception to the open and obvious rule applies, a court should "engage in the factor analysis that the supreme court has used to determine duty." *Belluomini*, 346 Ill. App. 3d at 694; see *LaFever*, 185 Ill. 2d at 392-98 (the court found the deliberate encounter exception applied where the plaintiff had to encounter the open and obvious condition "to fulfill his employment obligations," and even though the likelihood of injury did not weigh heavily in favor of finding a duty, the burden on landowner to protect against harm was slight, and consequences of placing that burden on landowner were unremarkable).

¶ 40    In the instant case, we find no reason to examine whether the four factors favor a finding that the City owed a legal duty to the plaintiff under the deliberate encounter exception to the open and obvious rule. The evidence establishes that the plaintiff did not deliberately encounter the open and obvious condition. *LaFever*, 185 Ill. 2d at 396; *Garcia*, 408 Ill. App. 3d at 617; see also *Belluomini*, 346 Ill. App. 3d at 695 (distraction exception did not

apply "because there is no evidence that plaintiff was actually distracted").

¶ 41 Had the plaintiff taken notice of the gap in the street's surface to deliberately encounter the condition, she would have readily appreciated the slight risk of crossing the gap and, in the course of exercising due care for herself, been able to traverse it without incident, much as she did on the opposite side of the street. There is also no contention that the plaintiff was compelled to encounter the open and obvious condition as she had avoided the intersection during the period of actual construction. See *Prostran*, 349 Ill. App. 3d at 90 ("While this testimony reveals plaintiff's preference for walking on the east side of North Oakley, it does not demonstrate that she was compelled to do so."); *Park v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶ 26 (deliberate encounter exception did not apply where there was no showing that a reasonable person "would have disregarded the obvious risk of crossing railroad tracks while a train is approaching"); *Kleiber v. Freeport Farm & Fleet, Inc.*, 406 Ill. App. 3d 249, 259 (2010) (deliberate encounter exception did not apply where "plaintiff had another option available").

¶ 42 On *de novo* review, we agree with the circuit court that the deliberate encounter exception to the open and obvious rule did not apply under the facts of this case.

¶ 43                              CONCLUSION

¶ 44 The circuit court did not err in granting summary judgment where the condition at issue was open and obvious as a matter of law and the deliberate encounter exception to the doctrine did not apply.

¶ 45    Affirmed.

C 163



PLAINTIFF'S
EXHIBIT
#5
1-28-11



PLAINTIFF'S EXHIBIT

11-28-11