2023 IL App (1st) 211655-U

Sixth Division
April 28, 2023

No. 1-21-1655

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| PATRICIA ANN CASEY POWELL and RICHARD HAYS POWELL, | ) ) ) Appeal from the ) Circuit Court of |
| Plaintiffs-Appellants, | ) Cook County. ) |
| v. | ) No. 19 L 7412 ) |
| THE CITY OF CHICAGO, | ) The Honorable ) John H. Ehrlich, |
| Defendant-Appellee. | ) Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Justices C.A. Walker and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the trial court's grant of summary judgment in favor of defendant where the dangerous condition that caused plaintiff's injury was open and obvious, and neither the distraction exception nor the deliberate encounter exception applied.

¶ 2    Plaintiffs, Patricia Ann Casey Powell and Richard Hays Powell (collectively, the Powells), appeal the trial court's grant of summary judgment for defendant, the City of Chicago (City), on the Powells' negligence claim. On appeal, the Powells contend that the trial court erred in granting summary judgment where a question of fact existed as to whether the dangerous condition on a

sidewalk was open and obvious, or, if the danger were open and obvious, whether the distraction and deliberate encounter exceptions applied. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On July 8, 2019, the Powells filed a complaint claiming that Patricia tripped and fell over a sign pole lying on the sidewalk near 151 West Adams Street in Chicago.[1] The Powells alleged that the City had prior notice of the damaged pole and, due to its exclusive control over the property, had a duty to maintain the pole "in a condition that was reasonably safe to the public." The Powells claimed that the City failed to maintain its property, failed to remove or promptly repair the damaged pole, and failed to warn Patricia of the dangerous condition. The Powells sought damages for negligence and loss of consortium.

¶ 5      The record on appeal contains the depositions of Patricia, her granddaughter Hartley Powell, and City employees Lendale Rouse and Guadalupe Aguilar, as well as records from the City of Chicago Department of Transportation (Department) and exhibits.

¶ 6      Patricia testified that on June 8, 2019, she and her husband Richard visited Chicago with two of their grandchildren. The group walked west on Adams Street towards the Willis Tower, with Patricia walking ahead of the others. Adams Street was "busy," so Patricia had to "pay attention" to avoid other pedestrians. She stayed on the right side of the sidewalk to avoid a bicyclist and pedestrians coming from the opposite direction.

¶ 7      As she walked, Patricia looked at the "beautiful architecture and buildings" and thought about "getting to" the Willis Tower. She then "pitch[ed] forward," falling to the sidewalk. Patricia did not know what she tripped on, but her granddaughter said it was a sign pole. Patricia did not

---

[1]Because Patricia Ann Casey Powell, Richard Hays Powell, and a witness, Hartley Powell, have the same last name, we refer to them by their first names.

see the black sign pole on the sidewalk prior to her fall, and she did not know if anything obstructed her view of the pole. Patricia could not remember how many people were coming towards her when she approached the pole. No particular distraction, such as a loud noise or shouting, was present when Patricia fell. An employee from a nearby hotel told Patricia's husband that he had contacted the City about the pole because it was a "tripping hazard." Due to the accident, Patricia sustained an injury to her shoulder and required surgery.

¶ 8    Hartley testified that the accident occurred in the afternoon on a sunny day when she was 14 years old. She was walking behind Patricia, and a little to the left, when Patricia's foot hit a metal pole, five or six feet long, lying parallel to the curb. As Patricia fell, her head hit a streetlight post. Hartley could not remember if anyone was in front of Patricia before she tripped. Hartley saw Patricia's feet near the pole as she fell, and nothing but the pole could have caused her to fall.

¶ 9    Rouse, a sign hanger at the Department, testified that damaged signs are reported through the City's 311 program. The operator receiving the report prepares a service request and sends the request to a field service inspector. The inspector then prepares a work order which is sent to the sign hangers who repair or replace the signs. No person or department is assigned to travel the streets looking for damaged signs. Instead, the City relies on citizens to assist in identifying damaged signs.

¶ 10    According to Rouse, damaged "stop" and "one-way" signs are repaired or replaced within 24 hours. "Do not enter" signs are repaired within 48 hours. All other signs are repaired within 50 days. If Rouse were notified of a sign on the ground, he agreed that he would try to repair it "within a few days" because that was "part of [his] job." Rouse stated that a sign on the ground posed a "trip hazard" only "if you're not paying attention to where you're going."

¶ 11    Aguilar, a sign hanger for the City, testified that all sign poles are painted black. Pedestrians therefore can see the poles lying on the light-colored sidewalk "if they're paying attention." He agreed that a pole on the ground may cause an accident if a person is not "looking at the ground."

¶ 12    Records produced in discovery, which are included in the record on appeal, showed that the Department received a sign repair request at 151 West Adams, the site of Patricia's accident, on May 26, 2019. The work order report indicated that it was a "standard" priority request "typically completed in about 50 days." Another work order report, dated May 30, 2019, described a damaged sign base at that location. A photograph in the record shows Patricia sitting on the sidewalk with her legs draped over a five- or six-foot long black pole lying parallel to the curb; other photographs show just the pole and a close view of the sign base. The pole was removed on June 20, 2019.

¶ 13    On June 16, 2021, the City moved for summary judgment on the complaint, arguing that it did not owe Patricia a duty of care where the dangerous condition was open and obvious, the distraction exception did not apply, and Patricia did not claim she deliberately encountered the pole.

¶ 14    On December 10, 2021, the trial court granted the motion. The court found that,

> "the photographs in the record make plain the location of the sign pole on the West Adams Street sidewalk, parallel and close to the curb. In instances in which photographs plainly depict the condition at issue, any dispute as to the condition's physical nature is objectively unreasonable. *Ballog v. City of Chicago*, 2012 IL App (1st) 112429, ¶ 30."

¶ 15    The trial court concluded that pole was open and obvious, and further, exceptions for distractions and deliberate encounters did not apply. First, the only distractions Patricia identified

were the pedestrian traffic flow and "Chicago's renowned architecture." Without an actual distraction, it was "not objectively reasonable" for the City to expect that a pedestrian exercising reasonable care "would look elsewhere and fail to avoid the risk of injury from an open and obvious hazard on the sidewalk." Second, Patricia was "under no economic compulsion to visit Willis Tower," and other routes may have been available to avoid the pedestrian traffic on Adams.

¶ 16    The trial court then conducted a "traditional duty analysis." The court concluded that the City "has miles of sidewalks to maintain"; therefore, imposing "an increased burden" to expedite sign repair "is not justified given the open-and-obvious nature and risks of a downed sign pole." Therefore, the City owed Patricia no duty to protect her from the sign pole on the sidewalk.[2]

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, the Powells argue that the trial court improperly found, based on the photographs, that the sign pole was an open and obvious condition as a matter of law. Furthermore, even if the condition were open and obvious, the court erred in finding that the distraction and deliberate encounter exceptions did not apply. Lastly, the Powells argue that a question of fact exists regarding whether, under the traditional duty analysis, the City had a duty to remove the pole.

¶ 19    Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West

---

[2]Neither the City's motion for summary judgment nor the Powells's response thereto nor the circuit court's judgment expressly addressed Richard's loss of consortium claim. However, a loss of consortium claim derives from the injured spouse's claim, and "[w]hen the impaired spouse's claim fails as a matter of law, the deprived spouse's claim for loss of consortium must also fail." *Ramirez v. City of Chicago*, 2019 IL App (1st) 180841, ¶ 20. The circuit court's judgment implicitly granted summary judgment in favor of the City on Richard's loss of consortium claim. Further, neither party advances any argument related to the propriety of the circuit court's dismissal of the loss of consortium claim.

2020). Although the Powells need not prove their case at this stage, to survive a motion for summary judgment they must present a factual basis that would arguably entitle them to a judgment. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). We review the trial court's grant of summary judgment *de novo*. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 20    In a negligence action, plaintiffs must plead and prove the existence of a duty owed by the defendant, a breach of that duty, and injury proximately resulting from the breach. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. "The existence of a duty under a particular set of circumstances is a question of law for the court to decide." *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 22. Absent a duty, plaintiffs cannot recover on their negligence claim as a matter of law. *Id.* We therefore determine whether the City owed a duty to Patricia under the circumstances that caused her accident.

¶ 21    The Local Governmental and Governmental Employees Tort Immunity Act provides that the City "has the duty to exercise ordinary care to maintain its property in a reasonably safe condition." 745 ILCS 10/3-102(a) (West 2018). The City, however, has no duty to protect against injury from a dangerous condition that is open and obvious. *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44 (2003). "Open and obvious" means that the condition and risk are apparent to and appreciated by a reasonable person "exercising ordinary perception, intelligence, and judgment." *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 435 (1990).

¶ 22    While the open and obvious rule applies to commonly dangerous conditions such as fire, height, and bodies of water, it may also apply to other conditions. See *Bruns*, 2014 IL 116998, ¶ 17 (collecting cases). Where the physical nature of the dangerous condition is well-documented and undisputed, whether the condition is open and obvious is a question of law. *Id.* ¶ 18.

¶ 23    Here, the parties do not dispute the physical characteristics of the pole on the sidewalk, and photographs in the record clearly depict the physical nature of the pole. See *Ballog*, 2012 IL App (1st) 112429, ¶ 30 (finding no reasonable dispute over the physical nature of a gap on the street depicted in a photograph). The photograph shows nothing that would obstruct a pedestrian's view of the pole. Although Patricia testified at her deposition that she did not see the pole, she did not say her view of the pole was obstructed. Hartley, who was walking behind Patricia before the accident, testified in her own deposition that she saw the pole on the sidewalk and observed Patricia's foot near the pole when she fell. The fact that the pole on the sidewalk was readily visible indicates that the dangerous condition was open and obvious. *Fox v. Village of La Grange*, 2020 IL App (1st) 191340, ¶ 23. There is no question of fact regarding the issue.

¶ 24    This, however, does not mean the City had no duty to protect Patricia from the dangerous condition. Exceptions to the open and obvious rule exist when a defendant "can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger." (Internal quotation marks omitted.) *Bruns*, 2014 IL 116998, ¶ 20. These include exceptions for distractions and deliberate encounters. *Sollami v. Eaton*, 201 Ill. 2d 1, 15 (2002).

¶ 25    The Powells argue a question of fact exists regarding whether the distraction exception applies. The distraction exception applies when a property owner or possessor has reason to expect that an invitee's attention may be distracted so that she will not discover what is obvious or will fail to protect herself against the danger. *Id.* This exception usually involves a specific circumstance, created in whole or in part by the defendant, that required a plaintiff to divert her attention from the open and obvious danger. *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023,

1030 (2005). A landowner can reasonably foresee that an injury might occur when the landowner contributed to or was responsible for the distraction. *Id.*

¶ 26    For example, in *Deibert*, the defendant allowed debris to be thrown off a balcony so that the plaintiff had to look up to check for debris, and in doing so the plaintiff could not look down to avoid tripping on an open and obvious tire rut. *Diebert*, 141 Ill. 2d at 438-39. In *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 29 (1992), the supreme court found that the defendant, a billboard lessee, had a duty to protect a billboard painter from electrocution where the painter had to watch where to place his feet on the walk rail while working, and thus was distracted from the open and obvious danger of a powerline hanging 4½ to 5 feet above the walk rail. In both cases, the exception applied because "the distraction was reasonably foreseeable by the defendant." *Bruns*, 2014 IL 116998, ¶ 29.

¶ 27    Here, Patricia was distracted by pedestrian traffic and the architecture of surrounding buildings, conditions normally present on city sidewalks. Patricia has not identified any specific circumstance created by the City, as in *Deibert* and *American National*, that required her to look elsewhere or prevented her from avoiding the open and obvious hazard on the sidewalk. Patricia merely focused her attention on other things as she walked. It is not reasonably foreseeable that an injury might occur from such a "self-made" distraction. *Id.* ¶ 31; see also *Sandoval*, 357 Ill. App. 3d at 1031 (finding that the City had no duty to protect the plaintiff from harm posed by an open and obvious sidewalk defect where her injury resulted from "her own inattentiveness in not looking forward where she was walking"). To find otherwise would saddle the City with "the impossible burden" of rendering its sidewalks "injury-proof, a result which our supreme court has explicitly rejected." *Negron v. City of Chicago*, 2016 IL App (1st) 143432, ¶ 17 (citing *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 156 (1990) (while "certain conditions which, although *** 'known' or

'obvious' to customers, may not in themselves satisfy defendant's duty of reasonable care," a defendant does not have "the impossible burden of rendering its premises injury-proof")). Instead, landowners can reasonably expect that visitors will "appreciate and avoid obvious risks." *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 448 (1996).

¶ 28    The cases cited by the Powells are distinguishable. In *Ward*, the plaintiff purchased a large mirror from the defendant's store and was injured when he collided with a concrete post as he exited the store carrying the mirror. The defendant had placed the post directly outside the door to protect the doorway from damage or interference by vehicles. *Ward*, 171 Ill. 2d at 136. Our supreme court found the distraction exception applied because the door used by the plaintiff was his only means of egress, the post could not be seen from inside the store, and the defendant should have foreseen that a customer would be distracted by carrying large items purchased from the store that would obscure his view of the post. *Id.* at 153-54. Unlike the plaintiff in *Ward*, Patricia was distracted from the pole on the sidewalk by her own decision to look elsewhere rather than by specific circumstances the City created.

¶ 29    In *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 314 Ill. App. 3d 195 (2000), the plaintiff tripped over a one- or two-inch piece of a black mat as she walked from a locker room to a shower area. The *Buchaklian* court found that the dangerous condition was not open and obvious as a matter of law because the defect was difficult to see given its small size, there was a "lack of significant color contrast between the defect and the surrounding mat," and the time in which a person had to discover the defect was short when walking from the locker room to the shower. *Id.* at 202. The plaintiff and her friend also stated that they did not see the defect prior to the plaintiff's fall. *Id.* The court found summary judgment for the defendant was improper because these facts raised the issue of "whether a reasonably prudent person should have

anticipated that an injury would result from walking normally" over the mat. *Id.* Given the facts, the court refused to hold that "invitees, as a matter of law, are required to look constantly downward." *Id.*

¶ 30    *Buchaklian* is distinguishable because the court in that case did not address whether the distraction exception applied, the issue here, but rather considered whether the dangerous condition "was open and obvious in the first place." See *Bruns*, 2014 IL 116998, ¶ 33. In this case, pedestrians did not need to "look constantly downward" to avoid the pole on the sidewalk. A photograph confirmed that the five- to six-foot pole, painted black in stark contrast to the sidewalk, was clearly visible. Hartley testified that she could see the pole when Patricia tripped over it, and no evidence suggested that the pole was obstructed from view. The parties do not dispute the physical nature of the pole on the sidewalk. Where the physical nature of the dangerous condition is well-documented and undisputed, courts may find as a matter of law that the condition is open and obvious. *Id.* ¶ 18. We find the distraction exception does not apply. There is no question of fact regarding this issue.

¶ 31    Alternatively, the Powells argue a question of fact exists regarding whether the deliberate encounter exception applies. A duty to protect against harm from an open and obvious danger may be found when a landowner can reasonably expect that invitees will encounter the known danger because the advantages outweigh the apparent risks. *LaFever v. Kemlite Co., a Division of Dyrotech Industries, Inc.*, 185 Ill. 2d 380, 391 (1998). In *LaFever*, the supreme court determined that this exception applied because the defendant could have reasonably foreseen that the plaintiff would walk across debris consisting of slippery fiberglass "edge trim" to perform his job. *Id.* Although application of the deliberate encounter exception is not limited to circumstances where a person is compelled by economic concerns, there must exist some compulsion or impetus under

which a reasonable person in the plaintiff's position would have disregarded the obvious risk. *Sollami*, 201 Ill. 2d at 16-17.

¶ 32 Furthermore, the deliberate encounter exception applies, as the name suggests, when a plaintiff's encounter with a dangerous condition was deliberate. *Ballog*, 2012 IL App (1st) 112429, ¶ 38. If Patricia did not notice the pole before she tripped over it, as she testified in her deposition, her encounter was not deliberate. See *Garcia v. Young*, 408 Ill. App. 3d 614, 617 (2011) (finding that where the plaintiff did not notice the pothole that caused his injury, the deliberate encounter exception did not apply).

¶ 33 Regardless, the Powells have not shown that Patricia reasonably disregarded the risk of walking into the pole due to a compulsion or impetus. The Powells contend that Patricia was compelled to walk on the right side of the sidewalk, where the pole was located, due to pedestrian and bicycle traffic. Patricia, however, did not have to continue walking as she approached the pole. Nothing in the record shows that she was prevented from stopping, or that she was compelled to encounter the obvious hazard as was the case in *LaFever*. While a person might walk in a certain direction because of sidewalk traffic and, in doing so, he or she might encounter a hazard, the pertinent question here is whether the City could have reasonably foreseen that Patricia would disregard the obvious risk of walking into the pole. *Sollami*, 201 Ill. 2d at 17; *LaFever*, 185 Ill. 2d at 392. As our supreme court noted, "the concept of foreseeability is not boundless. That something might conceivably occur, does not make it foreseeable." (Internal quotation marks omitted.) *Bruns*, 2014 IL 116998, ¶ 34. We find that the deliberate encounter exception does not apply. No question of fact exists regarding this exception.

¶ 34 Although we hold that the distraction and deliberate encounter exceptions are inapplicable, our inquiry does not end here. In determining whether a duty is owed, we must still conduct a

traditional duty analysis under the particular facts of the case. *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 425 (1998). The factors to consider are (1) foreseeability, (2) the likelihood of injury, (3) the magnitude of the burden on the defendant to guard against the injury, and (4) the consequences of placing a burden on the defendant. *Sollami*, 201 Ill. 2d at 17.

¶ 35     When the dangerous condition is open and obvious, the first and second factors carry little weight "because a defendant is ordinarily not required to foresee injury from a dangerous condition that is open and obvious," and a defendant may presume that persons encountering a potentially dangerous condition will appreciate and avoid the risks and therefore, the likelihood of injury is slight. *Bruns*, 2014 IL 116998, ¶ 36.

¶ 36     As for the remaining factors, the burden on the City to guard against injuries such as Patricia's would be unreasonably high where the City has hundreds if not thousands of miles of sidewalk to maintain. *Id.* ¶ 37; *Negron*, 2016 IL App (1st) 143432, ¶ 26. The deposition of Rouse, along with Department records, show the City has a procedure that prioritizes repairing "stop" and "do not enter" signs, while other signs such as the one on 151 West Adams are repaired within 50 days of notification in the 311 system. The damaged sign pole was clearly visible and was repaired within 50 days. The Powells contend that the burden on the City to remove the downed pole and put it in storage until it could be replaced was minimal. However, as the circuit court noted, the pole was laid down on the sidewalk parallel to and near the curb, not in the middle of the sidewalk. The increased burden on the City that would result from altering its current system is not justified given the open and obvious nature of the risk involved. See *Bruns*, 2014 IL 116998, ¶ 37. Accordingly, we find no question of fact exists regarding whether the City had a duty to protect Patricia from the pole on the sidewalk here. It did not.

¶ 37                          III. CONCLUSION

¶ 38    For the foregoing reasons, we affirm the trial court's grant of summary judgment for the City.

¶ 39    Affirmed.